IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHELLY KAMALE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1894-N |
| | § | |
| RELIABLE LIFE INSURANCE CO., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant Reliable Life Insurance Company's ("Reliable") Motion for Summary Judgment [10]. Because the Court finds that the Mediated Settlement Agreement is enforceable, the Court grants Reliable's motion with respect to Kamale's failure to promote claims. Additionally, the Court finds that Kamale has not established a prima facie case of discrimination and retaliation in connection with her termination; therefore, the Court grants Reliable's motion for summary judgment with respect to those claims as well.

### I. KAMALE'S EMPLOYMENT WITH RELIABLE

Reliable hired Kamale as an insurance sales agent at its Waco, Texas office in June 2000. As an agent, Kamale's responsibilities included writing and maintaining policies for Reliable's clients within a specified geographic area known as an agency, as well as going door-to-door to sell new policies and going to existing customers' homes to collect monthly premiums.

In May 2003 and again in January 2004, Kamale learned that an assistant manager's position became available. Although Reliable does not advertise the availability of such positions, and therefore, Kamale never officially applied for the manager's positions, Kamale repeatedly made clear to her district manager that she aspired to become a manager. However, Reliable did not select Kamale for either position, and instead selected Dwayne Winn and Brad Hill, two agents in the Waco office, to fill the positions.

Following Reliable's failure to promote her to Assistant Manager on both occasions, Kamale filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in May 2004, alleging that Reliable did not promote her because of her age, sex, and national origin. Reliable and Kamale entered into an EEOC sponsored mediation of the charge in July 2004. During the course of this mediation, Reliable and Kamale reached an agreement under which Reliable would pay Kamale $7,500 in exchange for a full and complete release of all claims Kamale had pending at that time. Under the terms of the Mediated Settlement Agreement ("MSA"), Kamale agreed to sign a formal settlement agreement containing a more complete release of claims, after which Reliable would disburse all funds to Kamale. With the advice of her attorney, Kamale signed the MSA, as did Reliable, and the EEOC Division Director approved the MSA. Reliable then sent Kamale the formal settlement agreement, providing that Kamale released Reliable from any and all claims arising out of Reliable's conduct prior to the date of the agreement, and Reliable indicated it would send the settlement check upon receipt of the signed release. Kamale refused to sign the release because she feared she would be without recourse if

ORDER – PAGE 2

Reliable later terminated her employment or took other retaliatory action against her, so Reliable did not pay her the $7,500.

In May 2004, before Kamale settled her first EEOC charge, she fell down the stairs of a client's home and injured her hip and back.  Because Kamale was unable to return to work, Reliable placed her on disability leave and she received short-term disability benefits for six months, the maximum available.  Under Reliable's short-term disability program, an employee is administratively terminated if she is unable to return to work at the conclusion of the six-month period.  On multiple occasions, Reliable notified Kamale that her disability benefits would expire in November 2004, and that if she did not return to work per a physician's release, Reliable would terminate her employment in accordance with its policy. Kamale, however, did not obtain a physician's release to return to work before the expiration of the six-month period, and Reliable therefore terminated her employment.

Following her termination, Kamale filed a second charge of discrimination with the EEOC, asserting that Reliable terminated her employment because of her disability and in retaliation for filing her first EEOC charge.  The EEOC dismissed Kamale's second charge and issued her a Notice of Right to Sue.  Kamale then filed suit in this Court, asserting claims of sex, age, and national origin discrimination arising out Reliable's failure to promote her to Assistant Manager, as well as disability discrimination and retaliation in connection with her termination.  Additionally, Kamale claims that Reliable breached the MSA by requiring her to sign a complete release of claims in order to receive the $7500 in settlement funds. Reliable moves for summary judgment on all of Kamale's claims.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule 56(c) states that the party moving for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988), cert. den. 489 U.S. 1054. In the summary judgment context the Court is to accept the nonmovant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. RELIABLE IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

### A. The MSA Bars Kamale's Breach of Contract and Failure to Promote Claims

Kamale alleges that Reliable breached the MSA by requiring her to sign a release of claims that materially altered the terms of the MSA. Kamale, however, provides no evidence to support this claim. The record reflects that Kamale did, in fact, agree to release her claims against Reliable as part of the negotiated settlement of her first EEOC charge. In her deposition, Kamale stated that she later refused to sign the settlement papers because she feared she would have no recourse if Reliable then terminated her employment or took other

retaliatory action against her.  The Court, thus, construes Kamale's argument as claiming that Reliable materially altered the terms of the MSA by requiring Kamale to sign settlement papers that waived prospective claims against Reliable.  But the record does not support such a proposition.  The settlement agreement that Reliable presented to Kamale releases Reliable from all claims arising from Reliable's conduct up until the date of the agreement; the agreement did not, and could not, waive claims arising from future conduct.[1]

Kamale also argues that Reliable materially altered the terms of the MSA by requiring Kamale to sign a settlement agreement that did not contain paragraph four of the MSA.  This argument also lacks merit.  Paragraph four states that Reliable will not retaliate or discriminate against Kamale because she filed an EEOC charge – conduct that is already prohibited under federal law.  The inclusion or exclusion of this paragraph from the settlement agreement does not alter Reliable's legal obligation to refrain from discriminatory or retaliatory conduct, and therefore, its absence from the final settlement agreement does not materially alter the terms of the MSA.  Accordingly, Kamale has failed to raise a fact issue as to whether Reliable breached the MSA and the Court grants Reliable summary judgment on Kamale's breach of contract claim.

Furthermore, the Court finds that the MSA bars Kamale's claims for discrimination that occurred prior to the date Kamale signed the MSA, including her failure to promote claims.  The record reflects that Kamale knowingly and voluntarily signed the MSA, as she

---

[1] An employee may only validly release those claims arising from acts or practices that occurred prior to the release; an employee may not waive prospective rights.  *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986).

ORDER – PAGE 5

had legal representation at the time and she has offered no evidence of fraud or coercion on the part of Reliable.  The MSA is therefore a valid and enforceable agreement and Kamale is bound by its terms.  *See Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) ("Absent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute.").  In signing the MSA, Kamale unambiguously agreed to release any claims she had regarding Reliable's failure to promote her in exchange for a $7500 settlement.  Her subsequent refusal to execute the formal settlement agreement or to accept the settlement funds does not relieve her of the obligation to release those claims relating to Reliable's failure to promote her.  *See id.* at 1209–10 (upholding district court's enforcement of the parties' valid settlement agreement, although plaintiff later refused to execute settlement documents).  Thus, Kamale cannot now pursue those claims.[2]

### B. Kamale Fails to Establish a Prima Facie Case of Discrimination or Retaliation Regarding her Termination

Reliable argues that Kamale has not established a prima facie case of discrimination and retaliation in connection with her termination, and therefore, the Court should grant summary judgment as to those claims.  The Court agrees.

---

[2]Given that, at Reliable's request, the Court has enforced Kamale's release of claims in the MSA, notwithstanding her failure to sign the contemplated formal settlement agreement, it would appear that Reliable's obligation to pay Kamale under the MSA is also mature.

The burden-shifting analysis presented in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to employment discrimination and retaliation claims where, as here, the plaintiff provides only circumstantial evidence to support her claims. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *McInnis v. Alamo Cmty. College Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). Under this analysis, Kamale must first establish a prima facie case, which gives rise to the presumption that the employer acted with discriminatory intent. *See St. Mary's Honor Ctr.*, 509 U.S. at 506–07. Reliable may then rebut this presumption by providing a legitimate nondiscriminatory reason for the underlying employment action. *Id.* Once Reliable produces such a legitimate rationale, the burden again rests with Kamale to produce sufficient evidence to create a genuine issue of fact that either: (1) Reliable's proffered reason for its employment action is not true, but is instead a pretext for discrimination or (2) Reliable's reason, though true, is only one of the reasons for its conduct and that another "motivating factor" was discriminatory. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Kamale alleges that Reliable violated the Americans with Disabilities Act ("ADA") when it terminated her employment because of her injury. To establish a prima facie case of disability discrimination under the ADA, Kamale must demonstrate that: (1) she has a disability or is regarded as disabled; (2) she was qualified for the job in question at the relevant time; (3) she suffered an adverse employment action because of her disability; and (4) she was replaced by or treated less-favorably than nondisabled employees. *McInnis*, 207

F.3d at 279–80.  The ADA defines "disability" as having or being regarded as having a "physical or mental impairment that substantially limits one or more of the major life activities of an individual," such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, or working."  *Id.* at 280.  However, only injuries carrying long-term or permanent limitations qualify as "disabilities" under the ADA, even if the injury results in significant short-term limitations.  *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997).  Kamale does not dispute that her injury, although temporarily debilitating, has not resulted in any permanent limitation.  Furthermore, Kamale has not alleged or produced any evidence to show that Reliable regarded her as disabled. Accordingly, Kamale has not shown that she is disabled within the meaning of the ADA, and thus, she cannot establish a prima facie case of discrimination.

Kamale also alleges that Reliable terminated her in retaliation for making her first EEOC charge.  Kamale may establish a prima facie case of retaliation by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).  Kamale, however, cannot sustain this initial burden because she cannot show that a causal connection exists between her first EEOC charge and her termination.

Kamale produces no evidence to support the existence of a causal connection between her first EEOC charge and her termination other than the temporal proximity between the two events.  "The cases that accept mere temporal proximity between an employer's

knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). Here, six months elapsed between Reliable's knowledge of Kamale's first EEOC charge and her termination. The Court holds that when the only theory of causation is temporal proximity, a lapse of six months precludes any inference of causation as a matter of law. *See, e.g.*, *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (agreeing that a four-month gap between the protected activity and the adverse employment action was insufficient to support inference of retaliation); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (same with respect to three-month lapse). Kamale has thus failed to establish a prima facie case of retaliation.

## Conclusion

Because Kamale knowingly and voluntarily agreed to release all claims she had against Reliable as of the date of the MSA, she cannot now pursue her failure to promote claims; Reliable is entitled to summary judgment on those claims. Additionally, Kamale has failed to raise a genuine issue of material fact to support her breach of contract claims, and she has failed to establish a prima facie case of discrimination and retaliation in connection with her termination. Accordingly, the court grants Reliable's motion for summary judgment as to all of Kamale's claims.

Signed November 20, 2006.


David C. Godbey
United States District Judge